### Thomas D. Kennedy *v.* W. E. Arthur.

**Wills—Vested Remainder.**

"I give and bequeath, in trust, to Thomas D. Kennedy and George M. Southgate one-sixth part of said real estate for the use and benefit of the children of William W. Southgate, my deceased son, to be equally divided between them, subject to the following restriction: that said trustees will hold one-tenth of said real estate for Adeliza Arthur for life, remainder to her children. Should any of the children of William W. Southgate die without issue and unmarried, their part to go to the remaining brothers and sisters." At the publication of this will, and at the testator's death W. W. Southgate's daughter, Mrs. Arthur had married the appellee with reasonable prospect of issue, and not long afterward gave birth to a son, whom she survived. After her own death her surviving husband, the appellee, as heir of his infant son, claiming the tenth part of the testator's estate, proceeded to assert his right by this suit. Held: That the remainder was vested on the birth of the son free from any contingency of defeasance, and that, therefore, the father, as heir to that son, is entitled to the estate as claimed.

**Same—Words and Phrases.**

The phrase "unmarried and without issue," used in a devise to children, held to mean "without lawful issue."

**Same—Descent and Distribution—Where Wife Would Survive Her Issue.**

Where under the provisions of a will aforesaid, and the wife should survive her issue, and the husband should survive her, she not having died unmarried, the devise could not take effect, and the estate would pass by the law of descent and distribution.

APPEAL FROM KENTON CIRCUIT COURT.

March 25, 1865.

OPINION OF THE COURT BY JUDGE ROBERTSON:

The court being sufficiently advised delivered the following opinion; to-wit:

The will of *Richard Southgate* Sr. late of Covington, Kentucky, unusually elaborate and multifarious disposes of a vast estate, real and personal in Kentucky and Ohio in terms, in many respects, so incongruous and ambiguous as necessarily to create much doubt as to his whole intent, and to breed a spirit of vexatious litigation. And this suit is one of the offsprings of that ambiguity.

The testator left four surviving children, and also two grand children by his deceased son Richard, and ten by his deceased son William W. Southgate. Mrs. Grant and Mrs. Arthur are two of W. W. Southgate's ten children. The testator's purpose, as announced in his will, was to divide his whole estate equally among these six stocks of descendants. And for that purpose he directed a interallottment among them of one-sixth to each stock. And the partition was so accordingly made.

That portion of the will which bears directly on the rights of the parties in this case is as follows:

"I give and bequeath in trust to Thomas D. Kennedy and George "M. Southgate one-sixth part of said real estate for the use and "benefit of the children of William W. Southgate, my deceased son, "to be equally divided between them but subject to the following "restrictions: That said trustees will hold one-tenth of said real "estate for the use and benefit of *Laura Grant* during her life, and "at her death, remainder to her children—that said trustees will "hold one-tenth of said real estate in trust for the children of "*Samuel Walker* by his wife *Martha*—that said trustees shall "hold one-tenth of said real estate for *Adeliza Arthur* for life, "remainder to her children—the real estate herein conveyed to "said *Laura* and *Adeliza* to be free from all courtesy or the con-"trol of their husbands; one-tenth in trust for *Richard Southgate;* "one-tenth in trust for each of the other children to be conveyed "to them on their arrival at age, the conveyance to the daughters "for life, remainder to their children, and to their sole and sepa-"rate use—"

"I give and bequeath in trust to *James M. Smiley* and *Thomas* "*D. Kennedy* one-sixth of my real and personal estate for the use

"and benefit of the children of my son *Edward* to be equally
"divided between them."

"Should any of the children of *William Southgate* die without
"issue and unmarried, their part to go to the remaining brothers
"and sisters and their descendants, and the children of *Samuel*
"*Walker* who will take their mother's share. Should any of the
"children of *Edward Southgate* die unmarried and without issue,
"their to go to the remaining brothers and sisters and their
"descendants."

At the publication of the will, and at the testator's death *W. W.
Southgate's* daughter, *Mrs. Walker,* was dead leaving two infant
children. *Mrs. Grant* whose husband still lives, was married, and
had four children, and *Mrs. Arthur* had married the appellee
with reasonable prospects of issue, and not long afterward gave
birth of a son whom she survived, after her own death her sur-
viving husband, the appellee, as heir of his said infant son, claim-
ing the tenth part of the tetsator's estate, proceeded to assert his
right by this suit. The appellant as the only acting trustee,
resisted the claim insisted and still insists that the remainder
devised to *Mrs. Arthur's* children was contingent and defeasable
on the condition of her dying, as she did, without lawful issue
living at her death. On this issue the circuit court adjudged that
the remainder was vested on the birth of the son free from any
contingency of defeasance, and that therefore the appellee as heir
to that son, is entitled to the estate as claimed. And, after long
consideration, and much occasioned perplexity and doubt this court
concurs in that judgment.

We are well satisfied that the isolated devise to *Mrs. Arthur*
for life, remainder to her children should on conclusive authority,
be construed as vesting a remainder in her son as soon as born
indefeasible by his death.

Was that remainder qualified or limited by the devise over
in the event of the mother's death without issue *"living at her
death?"* The literal import of the contingent devise over, if it
apply at all to *Mrs. Arthur* requires that she should die without
issue *and* unmarried. Dying either without issue or unmarried
would not divest the remainder.

The concurrence of both contingencies would be indispensable
to such an effect. And if this be the true construction the judg-
ment of the circuit court it sustained in defiance of all opposing

arguments. But in our opinion the context and prevading purpose and spirit of the entire will as to limitations on the estate as devised, strongly preponderate against that interpretation of the words *"unmarried and without issue."* In each of the six devises of particular estates the same words are used as terms of limitation, except in one instance, in which the limitation is made to depend solely on dying "without issue." And in that instance there is no apparent reason, not equally applicable to all the others, for employing that technical term alone. Then why did the testator in other instances prescribe the condition in the form of dying "unmarried and without issue?" It would not have been because he contemplated a right in a surviving husband to take as husband his wife's expired life estate, which the law would not permit, and which the will carefully forbids. We can see only one clue to the solution of this problem. The testator intending lawful issue, which presupposes marriage, paraphrased the idea by using the word "unmarried" as the test of such issue, just as if he had by a more explicit pleonasm, "unmarried and (consequently) without (lawful) issue" or "without (lawful) issue" and (consequently) unmarried"—lawful issue being the fruit only of marriage.

The counsel for the appellant argued ably to prove that "unmarried and without issue," were designed to mean simply "without (lawful) issue;" and, that, we too think for the technical display or mistaken explicitness the testator intended to convey that idea by a superfluous and rather circumlocution. For the reasons just suggested and others, we need not add we concur with that counsel in the conclusion that "unmarried and without issue," as used in this will should be construed as synonimous with— *"without lawful issue."*

But the same counsel argued also that dying "without issue" means without *surviving* issue.

He must maintain this, or loose this case.

And here he and this court must part. As an indispensable prerequisite to the contingent devise over the testator expressly requires that the devisee of the life estate shall *die* "unmarried" as well as with issue. A woman once married, and having issue by the marriage *might* survive both issue and husband; and then, in one literal sense she might be considered, when she herself should die, as dying "unmarried and without issue." That women, even

in that case, could not be what the testator intended, for, as already suggested there could have been no rational motive or practical purpose for requiring the wife to survive the husband, who, if he survived her, could have no martial interest in the remainder, nor any interest under the will. But if, in the case supposed, the wife should survive her issue, and the husband should survive her, then as she did not die unmarried, the devise over could not take affect, and contrary to the anxious purpose of the testator, the property would pass by the law of descent, instead of passing, as he intended, by his will: And then, too, the appellant, as trustee, would have no pretense of claim to the remainder. Whatever may have been the testator's purpose, it must be presumed to have been practical, and not fruitless and therefore the conclusion is inevitable that by dying "unmarried" he did not intend dying a widow—but in the more popular and consistent import of "unmarried" meant *never* married.

The conclusion is fortified by the significant fact that no provision in the will contemplates a divestiture of a remainder once vested in a *great grand child* dying before the mother— and is still more strengthened by the fact that as before suggested, in one of the six devises over, the expressed contingency is only dying *"without issue;"* whereby lawful issue, which necessarily presupposes a legitimate father, and, of course, the marriage of the mother, was evidently intended as the only condition and implies that the testator did not intend as a commutative condition, that the wife should survive the husband, and, in that sense, die unmarried. And, as there is neither any apparent, nor could be any consistent motive for prescribing the sole conditions of dying "without issue" in one devise over and of dying "unmarried *and* without issue" in all the other like devises, we should for harmony and consistency interpret each of them as designated to convey the same idea and the same testamentary purpose of dying without issue or marriage *in whom the remainder could once vest* and as dying "unmarried" does not mean, that the husband shall survive the wife, or the copulated terms "without issue" cannot mean surviving issue, for each literal branch of the entire condition must refer to the same time and equally impart the same *statue* of celibacy, and consequently *never* bearing a child that could inherit any of the testator's estate. The inevitable consequence of this interpretation is that marriage and the birth of

a legitimate child vest the remainder indefeasibly regardless of the time when the father or the child, or both may happen to die. And we will only here add, that, in none of the five devises preceeding those to *Mrs. Grant* and to *Mrs. Arthur* is the condition of dying *"without* issue" or of dying "unmarried and without issue" applied to a married woman, *but only to unmarried infants* —And therefore, as there is no apparent reason for an exception of their cases we do not feel rquired or even authorized to accept them by any necessary or consistent interpretation of the provision "if any of the *children* of *W. W. Southgate* shall die unmarried and without issue"—This, for various reasons does not apply to W. W. Southgate's grandchildren and consequently does not include *Mrs. Arthur's* son by her marriage with the appellee. Nor, according to our interpretation already suggested can it apply to *Mrs. Grant,* who could not die without ever being married or ever having lawful issue; nor as it seems to us, did the testator, in prescribing it, contemplate Mrs. Arthur who could not die without ever being married nor without almost certainly having issue by her marriage then subsisting. As seven of *W. W. Southgate's* children had then never been married, and six of these were infants, the testator contemplating the possible and not improbable contingency of *some of them* never marrying may be consistently presumed to have prescribed the condition to provide for that contingency in which case it would fully apply to "any of the children of *W. W. Southgate* who should "die unmarried and without issue." And why therefore should we, unnecessarily and inconsistently, apply the condition to any other than the children who had never been married?

A more extensive application is neither required by a proper construction of the provision itself nor is consistent with the context, spirit and purpose. of the entire will, and moreover would be of no avail in this case unless our decision that *Mrs. Authur's* survivorship of her infant son did not affect the remainder vested in him at his birth be wrong, and there is nothing peculiar in the words or presumed object of that provision which in any way can tend to prove that our construction of dying "unmarried and without issue" is not right.

But the appellant's counsel has argued that the tenor of the will indicates that the testator's purpose was by studious and prolonged limitations, to exclude his *sons-in-law* from any possible

interest in the estate devised to their wives—and that such a construction of the limitation in this case as established a vested remainder in the appellee's infant son indefeasible by his death before the termination of his fother's life estate will frustrate that restrictive and provident purpose.

To that argument, there is a two-fold and decisive answer—First, in no instance do any of those limitations extend beyond grandchildren—Second, the appellant claims under the law, not under the will—as heir, and not as husband—from his own son, as a devisee, and not through his wife, nor from the testator's bounty. And this answer is made still more satisfactory from the fact that Samuel Walker, as father of two of the testator's great grandchildren, in the event of their death in infancy like that of his great grand child, Arthur would inherit absolutely and indisputably their interest under the will. And this he would do in perfect consistency with the admitted construction of all. the limitations and there is no apparent or imaginable motive for discriminating, in this respect, between the son-in-law Walker—and the son-in-law Arthur—nor does the testator appear to have contemplated any distinction in their ultimate rights as contingent heirs of their respective children to whim he had devised vested remainders not determinable by the death of any of them.

It is neither necessary or proper in this judicial opinion to present the case in every alternate and minute phase in which our careful investigations have led us to consider it. Having considerably threaded the various ramifications which a thorough analysis required, we have been unable to come to any conclusion so consistent with the whole will or as little liable to perplexing difficulty or doubht as that defined in the foregoing synopsis. And, while we admit that we feel with neither mathematical certainty nor full assurance that we have followed the true clue to this testamentary labyrinth, we are satisfied that it is the best which we could adopt with any assurance approaching judicial confidence. The construction we have adopted harmonizes the whole will—Any other would make some of its provisions motiveless, inconsistent and absurd.

Wherefore the judgment of the circuit court is *affirmed.*

*A copy Att. Leslie Combs, C. C. A. by R. R. Bolling, D. C.*